John J. Nelson (SBN 317598)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive-Penthouse
Beverly Hills, CA 90212
Telephone: (858) 209-6941
Fax: (865) 522-0049
Email: jnelson@milberg.com

Kevin Laukaitis (*pro hac vice* forthcoming)
**LAUKAITIS LAW LLC**
954 Avenida Ponce De Leon
Suite 205, #10518
San Juan, PR 00907
T: (215) 789-4462
klaukaitis@laukaitislaw.com

*Attorneys for Plaintiff and the Putative Class*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEIDRA GARRETT, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>v.<br><br>PACIFIC HEALTHWORKS, L.L.C. AND LA PEROUSE, LLC,<br><br>     Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

- 1 -

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Deidra Garrett ("Plaintiff") brings this class action against Defendants Pacific HealthWorks, LLC. ("Pacific"), and La Perouse, LLC ("La Perouse") (collectively, "Defendants") for their failure to properly secure and safeguard Plaintiff's and Class Members' protected health information ("PHI") and, personally identifiable information ("PII"), stored within Defendants' information network.

## **INTRODUCTION**

1.      Defendant Pacific is "[h]eadquartered in the Southern California city of El Segundo, Pacific HealthWorks' physician group clients specialize in Emergency Room, critical and ICU care, hospitalized patients, anesthesia, and psychiatry, as well as physician assistants (scribes) who handle medical electronic health records (EHR) for the doctors".[1]

2.      Defendant La Perouse is a billing and coding management company and Pacific's sister company.

3.      Defendants provide services to various physicians, medical practices, clinics and hospitals (hereinafter, the "Clients" or "Defendants' Clients")

4.       Defendants acquired, collected, and stored Plaintiff's and Class Members' PHI/PII financial information.

5.       At all relevant times, Defendants knew or should have known, that Plaintiff and Class Members would use Defendants' services to store and/or share

---

[1] *See* https://cybernews.com/news/pacific-healthworks-everest-ransomware-attack-la-perouse-data-leak-physician-groups/ (last accessed on August 15, 2025).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

sensitive data, including highly confidential PHI/PII.

6.      On or no later than August 9, 2025, upon information and belief, unauthorized third-party cybercriminals gained access to Plaintiff's and Class Members' PHI/PII as hosted with Defendant, with the intent of engaging in the misuse of the PHI/PII, including marketing and selling Plaintiff's and Class Members' PHI/PII.

7.      Shortly thereafter, the ransomware group known as Everest publicly identified Pacific HealthWorks ("PHW"), along with its sister company, La Perouse, on its so-called "victim blog" on the dark web. In that posting, Everest threatened that "billing data, as well as personal data of more than 50 organizations, will be published if the company does not contact us using the contacts below." [2]

8.      Between the two companies, the ransomware gang also released hundreds of file samples to demonstrate its possession of the stolen data, which included internal company documents and private patient information. Reports indicate that approximately 5,000 individuals have already viewed the victims' posts, further compounding the risk of misuse and unauthorized disclosure of Plaintiff's and Class Members' PHI/PII.[3]

9.      The total number of individuals who have had their data exposed due to Defendants' failure to implement appropriate security safeguards is approximately

---

[2] *Id.*
[3] *Id.*

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

unknown at this time but is estimated to be in the tens/hundreds of thousands based on Defendants' clientele.

10.    Personal health information ("PHI") is a category of information that refers to an individual's medical records and history, which is protected under the Health Insurance Portability and Accountability Act ("HIPAA"), which may include test results, procedure descriptions, diagnoses, personal or family medical histories and data points applied to a set of demographic information for a particular patient.

11.    Personally identifiable information ("PII") generally incorporates information that can be used to distinguish or trace an individual's identity, and is generally defined to include certain identifiers that do not on their face name an individual, but that is considered to be particularly sensitive and/or valuable if in the wrong hands (for example, Social Security numbers, passport numbers, driver's license numbers, financial account numbers).

12.    The vulnerable and potentially exposed data at issue of Plaintiff and the Class stored on Defendants' information network, includes, without limitation: Name, social security number, date of birth, Address, email, home phone, cell phone, Gender, race, marital status, financial class, Medical and billing records, Insurance and medical ID #, Insurance claims with diagnosis codes.[4]

13.    Defendants disregarded the rights of Plaintiff and Class Members by

---

[4] *Id.*

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

intentionally, willfully, recklessly, or negligently failing to take and implement adequate and reasonable measures to ensure that Plaintiff's and Class Members' PHI/PII was safeguarded, failing to take available steps to prevent unauthorized disclosure of data, and failing to follow applicable, required and appropriate protocols, policies and procedures regarding the encryption of data, even for internal use.

14.     As a result, the PHI/PII of Plaintiff and Class Members was compromised through disclosure to an unknown and unauthorized third party—an undoubtedly nefarious third party that seeks to profit off this disclosure by defrauding Plaintiff and Class Members in the future.

15.     Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe, and they are thus entitled to injunctive and other equitable relief.

## JURISDICTION AND VENUE

16.     Jurisdiction is proper in this Court under 28 U.S.C. §1332 (diversity jurisdiction). Specifically, this Court has subject matter and diversity jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action where the amount in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one class member is a citizen of a state different from Defendants.

17.     Supplemental jurisdiction to adjudicate issues pertaining to state law is

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

proper in this Court under 28 U.S.C. §1367.

18.    Defendants are headquartered and routinely conduct business in the State where this district is located, have sufficient minimum contacts in this State, and have intentionally availed themselves of this jurisdiction by marketing and selling products and services, and by accepting and processing payments for those products and services within this State.

19.    Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events that gave rise to Plaintiff's claims occurred within this District, and Defendants do business in this Judicial District.

## THE PARTIES

**Plaintiff Deidra Garrett**

20.    Plaintiff Deidra Garrett is an adult individual and, at all relevant times herein, a resident and citizen of California, residing in Los Angeles, California. Plaintiff is a victim of the Data Breach.

21.    Plaintiff's information was stored with Defendants as a result of their dealings with Defendants.

22.    As required in order to obtain services from Defendants, Clients provided Defendants with Plaintiff and Class Members highly sensitive health, personal, and financial information, who then possessed and controlled it.

23.    As a result, Plaintiff's information was among the data accessed by an unauthorized third-party in the Data Breach.

- 6 -

24.    At all times herein relevant, Plaintiff is and was a member of the Class.

25.    Plaintiff first learned of the Data Breach when she saw reports published on the internet.

26.    As a result, Plaintiff was injured in the form of lost time dealing with the consequences of the Data Breach, which included and continues to include: time spent verifying the legitimacy and impact of the Data Breach; time spent exploring credit monitoring and identity theft insurance options; time spent self-monitoring their accounts with heightened scrutiny and time spent seeking legal counsel regarding their options for remedying and/or mitigating the effects of the Data Breach.

27.    Plaintiff was also injured by the material risk to future harm they suffer based on Defendants' breach; this risk is imminent and substantial because Plaintiff's data has been exposed in the breach, the data involved, including Social Security numbers and healthcare information, is highly sensitive and presents a high risk of identity theft or fraud; and it is likely, given Defendants' clientele, that some of the Class's information that has been exposed has already been misused.

28.    Plaintiff suffered actual injury in the form of damages to and diminution in the value of their PHI/PII—a condition of intangible property that they entrusted to Defendant, which was compromised in and as a result of the Data Breach.

29.    Plaintiff, as a result of the Data Breach, has increased anxiety for their loss of privacy and anxiety over the impact of cybercriminals accessing, using, and

selling their PHI/PII.

30.    Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from their PHI/PII, in combination with their name, being placed in the hands of unauthorized third parties/criminals.

31.    Plaintiff has a continuing interest in ensuring that their PHI/PII, which, upon information and belief, remains backed up in Defendants' possession, is protected and safeguarded from future breaches.

**Defendants**

**Defendant Pacific HealthWorks, LLC.**

32.    Defendant Pacific HealthWorks, LLC., is a California limited liability corporation headquartered at 898 N PACIFIC Coast Highway, STE 600 El Segundo, CA 90245.

**Defendant La Perouse, LLC.**

33.    Defendant is a California limited liability corporation headquartered at 898 North Pacific Coast Highway, STE 600, El Segundo, California, 90245

## CLASS ACTION ALLEGATIONS

34.    28.    Plaintiff brings this action pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of themself and the following Class:

- 8 -

**Nationwide Class**
All individuals residing in the United States whose Private Information was accessed and/or acquired by an unauthorized party as a result of the Data Breach (the "Class").

**California Subclass**
All individuals residing in the State of California whose Private Information was accessed and/or acquired by an unauthorized party as a result of the Data Breach (the "California Subclass").

35.     Excluded from the Class are the following individuals and/or entities: Defendants and Defendants' parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendants have a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

36.     Plaintiff reserves the right to amend the above definitions or to propose subclasses in subsequent pleadings and motions for class certification.

37.     This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure Rule 23 because there is a well-defined community of interest in the litigation, and membership in the proposed classes is easily ascertainable.

38.     <u>Numerosity</u>: A class action is the only available method for the fair and efficient adjudication of this controversy, as the members of the Class are so

numerous that joinder of all members is impractical, if not impossible.

39.    Commonality: Plaintiff and the Class Members share a community of interests in that there are numerous common questions and issues of fact and law which predominate over any questions and issues solely affecting individual members, including, but not necessarily limited to:

a.    Whether Defendants had a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, using, and/or safeguarding their PHI/PII;

b.    Whether Defendants knew or should have known of the susceptibility of their data security systems to a data breach;

c.    Whether Defendants' security procedures and practices to protect their systems were reasonable in light of the measures recommended by data security experts;

d.    Whether Defendants' failure to implement adequate data security measures allowed the Data Breach to occur;

e.    Whether Defendants failed to comply with their own policies and applicable laws, regulations, and industry standards relating to data security;

f.    Whether Defendants adequately, promptly, and accurately informed Plaintiff and Class Members that their PHI/PII had been compromised;

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

g.   How and when Defendants actually learned of the Data Breach;

h.   Whether Defendants' conduct, including their failure to act, resulted in or was the proximate cause of the breach of their systems, resulting in the loss of the PHI/PII of Plaintiff and Class Members;

i.   Whether Defendants adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

j.   Whether Defendants engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PHI/PII of Plaintiff and Class Members;

k.   Whether Plaintiff and Class Members are entitled to actual and/or statutory damages and/or whether injunctive, corrective and/or declaratory relief and/or accounting is/are appropriate as a result of Defendants' wrongful conduct; and

l.   Whether Plaintiff and Class Members are entitled to restitution as a result of Defendants' wrongful conduct.

40.   <u>Typicality</u>: Plaintiff's claims are typical of the claims of the Class. Plaintiff and all members of the Class sustained damages arising out of and caused by Defendants' common course of conduct in violation of law, as alleged herein.

41.   <u>Adequacy of Representation</u>: Plaintiff in this class action is an adequate representative of the Class in that the Plaintiff has the same interest in the litigation

- 11 -
CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

of this case as the Class Members, is committed to the vigorous prosecution of this case and has retained competent counsel who are experienced in conducting litigation of this nature.

42.    Plaintiff is not subject to any individual defenses unique from those conceivably applicable to other Class Members or the class in their entirety. Plaintiff anticipates no management difficulties in this litigation.

43.    <u>Superiority of Class Action</u>: Since the damages suffered by individual Class Members, while not inconsequential, may be relatively small, the expense and burden of individual litigation by each member make or may make it impractical for members of the Class to seek redress individually for the wrongful conduct alleged herein. Should separate actions be brought or be required to be brought, by each individual member of the Class, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants.

44.    The prosecution of separate actions would also create a risk of inconsistent rulings, which might be dispositive of the interests of the Class Members who are not parties to the adjudications and/or may substantially impede their ability to protect their interests adequately.

45.    This class action is also appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to Class Members, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

appropriate with respect to the Class in their entirety.

46.    Defendants' policies and practices challenged herein apply to and affect Class Members uniformly, and Plaintiff's challenge of these policies and practices hinges on Defendants' conduct with respect to the Class in their entirety, not on facts or law applicable only to Plaintiff.

47.    Unless a Class-wide injunction is issued, Defendants may continue failing to properly secure the PHI/PII of Class Members, and Defendants may continue to act unlawfully as set forth in this Complaint.

48.    Further, Defendants have acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Federal Rule of Civil Procedure Rule 23.

## COMMON FACTUAL ALLEGATIONS

### Defendants' Failed Response to the Breach

49.    Not until after months it claims to have discovered the Data Breach did Defendants begin sending the Notice to persons whose PHI/PII Defendants confirmed was potentially compromised as a result of the Data Breach.

50.    The Notice included, *inter alia*, basic details of the Data Breach, Defendants' recommended next steps, and Defendants' claims that it learned of the Data Breach on August 11, 2025, and completed a review thereafter.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

51.     Upon   information   and   belief,   the   unauthorized   third-party cybercriminals gained access to Plaintiff's and Class Members' PHI/PII with the intent of engaging in the misuse of the PHI/PII, including marketing and selling Plaintiff's and Class Members' PHI/PII.

52.     Defendants had and continue to have obligations created by HIPAA, applicable federal and state law as set forth herein, reasonable industry standards, common law, and their own assurances and representations to keep Plaintiff's and Class Members' PHI/PII confidential and to protect such PHI/PII from unauthorized access.

53.     Plaintiff and Class Members were required to provide their PHI/PII to Defendants as a result of their dealings, and in furtherance of this relationship, Defendants created, collected, and stored Plaintiff and Class Members with the reasonable expectation and mutual understanding that Defendants would comply with their obligations to keep such information confidential and secure from unauthorized access.

54.     Despite this, Plaintiff and the Class Members remain, even today, in the dark regarding what particular data was stolen, the particular malware used, and what steps are being taken, if any, to secure their PHI/PII going forward.

55.     Plaintiff and Class Members are, thus, left to speculate as to where their PHI/PII ended up, who has used it, and for what potentially nefarious purposes, and are left to further speculate as to the full impact of the Data Breach and how exactly

- 14 -

Defendants intends to enhance their information security systems and monitoring capabilities to prevent further breaches.

56.    Unauthorized individuals can now easily access the PHI/PII and/or financial information of Plaintiff and Class Members.

**Defendants Collected/Stored Class Members' PHI/PII**

57.    Defendants acquired, collected, and stored and assured reasonable security over Plaintiff's and Class Members' PHI/PII.

58.    As a condition of their relationships with Plaintiff and Class Members, Defendants required that Plaintiff and Class Members entrust Defendants with highly sensitive and confidential PHI/PII.

59.    Defendants, in turn, stored that information in the part of Defendants' system that was ultimately affected by the Data Breach.

60.    By obtaining, collecting, and storing Plaintiff's and Class Members' PHI/PII, Defendants assumed legal and equitable duties and knew or should have known that they were thereafter responsible for protecting Plaintiff's and Class Members' PHI/PII from unauthorized disclosure.

61.    Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their PHI/PII.

62.    Plaintiff and Class Members relied on Defendants to keep their PHI/PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

63.     Defendants could have prevented the Data Breach, which began no later than August 9, 2025, by adequately securing and encrypting and/or more securely encrypting their servers generally, as well as Plaintiff's and Class Members' PHI/PII.

64.     Defendants' negligence in safeguarding Plaintiff's and Class Members' PHI/PII is exacerbated by repeated warnings and alerts directed to protecting and securing sensitive data, as evidenced by the trending data breach attacks in recent years.

65.     Yet, despite the prevalence of public announcements of data breach and data security compromises, Defendants failed to take appropriate steps to protect Plaintiff's and Class Members' PHI/PII from being compromised.

**<u>Defendants Had an Obligation to Protect the Stolen Information</u>**

66.     Defendants' failure to adequately secure Plaintiff's and Class Members' sensitive data breaches duties it owes Plaintiff and Class Members under statutory and common law. Under HIPAA, health insurance providers have an affirmative duty to keep patients' Protected Health Information private. As a covered entity, Defendants have a statutory duty under HIPAA and other federal and state statutes to safeguard Plaintiff's and Class Members' data. Moreover, Plaintiff and Class Members surrendered their highly sensitive personal data to Defendants under the implied condition that Defendants would keep it private and secure. Accordingly, Defendants also have an implied duty to safeguard their data, independent of any statute.

67.     Because Defendants is covered by HIPAA (45 C.F.R. § 160.102), it is

required to comply with the HIPAA Privacy Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

68.    HIPAA's Privacy Rule or Standards for Privacy of Individually Identifiable Health Information establishes national standards for protecting health information.

69.    HIPAA's Privacy Rule or Security Standards for the Protection of Electronic Protected Health Information establishes a national set of security standards for protecting health information that is kept or transferred in electronic form.

70.    HIPAA requires Defendants to "comply with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronically protected health information." 45 C.F.R. § 164.302.

71.    "Electronic protected health information" is "individually identifiable health information … that is (i) transmitted by electronic media; maintained in electronic media." 45 C.F.R. § 160.103.

72.    HIPAA's Security Rule requires Defendants to do the following:

a.    Ensure the confidentiality, integrity, and availability of all electronically protected health information the covered entity or

- 17 -

business associate creates, receives, maintains, or transmits;

b.    Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

c.    Protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and

d.    Ensure compliance by their workforce.

73.    HIPAA also requires Defendants to "review and modify the security measures implemented … as needed to continue provision of reasonable and appropriate protection of electronically protected health information" under 45 C.F.R. § 164.306(e), and to "[i]mplement technical policies and procedures for electronic information systems that maintain electronically protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1).

74.    Moreover, the HIPAA Breach Notification Rule, 45 C.F.R. §§ 164.400-414, requires Defendants to provide notice of the Data Breach to each affected individual "without unreasonable delay and in no case later than 60 days following the discovery of the breach."

75.    Defendants were also prohibited by the Federal Trade Commission Act (the "FTC Act") (15 U.S.C. § 45) from engaging in "unfair or deceptive acts or

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

practices in or affecting commerce."[5]

76.    In addition to their obligations under federal and state laws, Defendants owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the PHI/PII in Defendants' possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons.

77.    Defendants owed a duty to Plaintiff and Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that their computer systems, networks, and protocols adequately protected the PHI/PII of Plaintiff and Class Members.

78.    Defendants owed a duty to Plaintiff and Class Members to design, maintain, and test their computer systems, servers, and networks to ensure that the PHI/PII was adequately secured and protected.

79.    Defendants owed a duty to Plaintiff and Class Members to create and implement reasonable data security practices and procedures to protect the PHI/PII in their possession, including not sharing information with other entities who maintained sub-standard data security systems.

80.    Defendants owed a duty to Plaintiff and Class Members to implement

---

[5] The Federal Trade Commission (the "FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. See, e.g., *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

processes that would immediately detect a breach in their data security systems in a timely manner.

81.    Defendants owed a duty to Plaintiff and Class Members to act upon data security warnings and alerts in a timely fashion.

82.    Defendants owed a duty to Plaintiff and Class Members to disclose if their computer systems and data security practices were inadequate to safeguard individuals' PHI/PII and/or financial information from theft because such an inadequacy would be a material fact in the decision to entrust this PHI/PII and/or financial information to Defendants.

83.    Defendants owed a duty of care to Plaintiff and Class Members because they were foreseeable and probable victims of any inadequate data security practices.

84.    Defendants owed a duty to Plaintiff and Class Members to encrypt and/or more reliably encrypt Plaintiff's and Class Members' PHI/PII and monitor user behavior and activity in order to identify possible threats.

**Value of the Relevant Sensitive Information**

85.    PHI/PII are valuable commodities for which a "cyber black market" exists in which criminals openly post stolen payment card numbers, Social Security numbers, and other personal information on several underground internet websites.

86.    Numerous sources cite dark web pricing for stolen identity credentials; for example, personal information can be sold at a price ranging from $40 to $200,

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

and bank details have a price range of $50 to $200[6]; Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web[7]; and other sources report that criminals can also purchase access to entire company data breaches from $999 to $4,995.[8]

87.    Identity thieves can use PHI/PII, such as that of Plaintiff and Class Members, which Defendants failed to keep secure, to perpetrate a variety of crimes that harm victims—for instance, identity thieves may commit various types of government fraud such as immigration fraud, obtaining a driver's license or identification card in the victim's name but with another's picture, using the victim's information to obtain government benefits, or filing a fraudulent tax return using the victim's information to obtain a fraudulent refund.

88.    There may be a time lag between when harm occurs versus when it is discovered, and also between when PHI/PII and/or financial information is stolen and when it is used: according to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data might be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web,

---

[6] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last accessed August 15, 2025).
[7] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, *available at*: https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last accessed August 15, 2025).
[8] *In the Dark*, VPNOverview, 2019, *available at*: https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last accessed August 15, 2025).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[9]

89.    Here, Defendants knew of the importance of safeguarding PHI/PII and of the foreseeable consequences that would occur if Plaintiff's and Class Members' PHI/PII were stolen, including the significant costs that would be placed on Plaintiff and Class Members as a result of a breach of this magnitude.

90.    As detailed above, Defendants is a sophisticated organization with the resources to deploy robust cybersecurity protocols. It knew, or should have known, that the development and use of such protocols were necessary to fulfill their statutory and common law duties to Plaintiff and Class Members. Therefore, their failure to do so is intentional, willful, reckless and/or grossly negligent.

91.    Defendants disregarded the rights of Plaintiff and Class Members by, *inter alia*, (i) intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure that their network servers were protected against unauthorized intrusions; (ii) failing to disclose that they did not have adequately robust security protocols and training practices in place to adequately safeguard Plaintiff's and Class Members' PHI/PII; (iii) failing to take standard and reasonably available steps to prevent the Data Breach; (iv) concealing the existence and extent of the Data Breach for an unreasonable duration of time; and (v) failing

---

[9] *Report to Congressional Requesters*, GAO, at 29 (June 2007), *available at:* http://www.gao.gov/new.items/d07737.pdf (last accessed August 15, 2025).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

to provide Plaintiff and Class Members prompt and accurate notice of the Data Breach.

## CLAIMS FOR RELIEF

### COUNT ONE
**Negligence/Negligence *Per Se***
**(On behalf of the Class)**

92.     Plaintiff realleges and reincorporates every allegation set forth in the preceding paragraphs as though fully set forth herein.

93.     At all times herein relevant, Defendants owed Plaintiff and Class Members a duty of care, *inter alia*, to act with reasonable care to secure and safeguard their PHI/PII and to use commercially reasonable methods to do so. Defendants took on this obligation upon accepting and storing the PHI/PII of Plaintiff and Class Members in their computer systems and on their networks.

94.     Among these duties, Defendants were expected:

    a.     to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the PHI/PII in their possession;

    b.     to protect Plaintiff's and Class Members' PHI/PII using reasonable and adequate security procedures and systems that were/are compliant with industry-standard practices;

    c.     to implement processes to detect the Data Breach quickly and to timely act on warnings about data breaches; and

- 23 -

d.   to promptly notify Plaintiff and Class Members of any data breach, security incident, or intrusion that affected or may have affected their PHI/PII.

95.   Defendants knew that the PHI/PII was private and confidential and should be protected as private and confidential and, thus, Defendants owed a duty of care not to subject Plaintiff and Class Members to an unreasonable risk of harm because they were foreseeable and probable victims of any inadequate security practices.

96.   Defendants knew, or should have known, of the risks inherent in collecting and storing PHI/PII, the vulnerabilities of their data security systems, and the importance of adequate security.

97.   Defendants knew about numerous, well-publicized data breaches.

98.   Defendants knew, or should have known, that their data systems and networks did not adequately safeguard Plaintiff's and Class Members' PHI/PII.

99.   Only Defendants were in the position to ensure that their systems and protocols were sufficient to protect the PHI/PII that Plaintiff and Class Members had entrusted to them.

100.   Defendants breached their duties to Plaintiff and Class Members by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard their PHI/PII.

101.   Because Defendants knew that a breach of their systems could damage

- 24 -

thousands of individuals, including Plaintiff and Class Members, Defendants had a duty to adequately protect their data systems and the PHI/PII contained therein.

102.   Plaintiff's and Class Members' willingness to entrust Defendants with their PHI/PII was predicated on the understanding that Defendants would take adequate security precautions.

103.   Moreover, only Defendants had the ability to protect their systems and the PHI/PII is stored on them from attack. Thus, Defendants had a special relationship with Plaintiff and Class Members.

104.   Defendants also had independent duties under state and federal laws that required Defendants to reasonably safeguard Plaintiff's and Class Members' PHI/PII and promptly notify them about the Data Breach. These "independent duties" are untethered to any contract between Defendant, Plaintiff, and/or the remaining Class Members.

105.   Defendants breached their general duty of care to Plaintiff and Class Members in, but not necessarily limited to, the following ways:

    a.   by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard the PHI/PII of Plaintiff and Class Members;

    b.   by failing to timely and accurately disclose that Plaintiff's and Class Members' PHI/PII had been improperly acquired or accessed;

- 25 -

c.      by failing to adequately protect and safeguard the PHI/PII by knowingly disregarding standard information security principles, despite obvious risks, and by allowing unmonitored and unrestricted access to unsecured PHI/PII;

d.      by failing to provide adequate supervision and oversight of the PHI/PII with which it was and is entrusted, in spite of the known risk and foreseeable likelihood of breach and misuse, which permitted an unknown third party to gather PHI/PII of Plaintiff and Class Members, misuse the PHI/PII and intentionally disclose it to others without consent.

e.      by failing to adequately train their employees not to store PHI/PII longer than absolutely necessary;

f.      by failing to consistently enforce security policies aimed at protecting Plaintiff's and the Class Members' PHI/PII;

g.      by failing to implement processes to detect data breaches, security incidents, or intrusions quickly; and

h.      by failing to encrypt Plaintiff's and Class Members' PHI/PII and monitor user behavior and activity in order to identify possible threats.

106.    Defendants' willful failure to abide by these duties was wrongful, reckless, and grossly negligent in light of the foreseeable risks and known threats.

- 26 -

107.   As a proximate and foreseeable result of Defendants' grossly negligent conduct, Plaintiff and Class Members have suffered damages and are at imminent risk of additional harms and damages.

108.   The law further imposes an affirmative duty on Defendants to timely disclose the unauthorized access and theft of the PHI/PII to Plaintiff and Class Members so that they could and/or still can take appropriate measures to mitigate damages, protect against adverse consequences, and thwart future misuse of their PHI/PII.

109.   Defendants breached their duty to notify Plaintiff and Class Members of the unauthorized access by waiting months after learning of the Data Breach to notify Plaintiff and Class Members, and then by failing and continuing to fail to provide Plaintiff and Class Members sufficient information regarding the breach.

110.   To date, Defendants have not provided sufficient information to Plaintiff and Class Members regarding the extent of the unauthorized access and continue to breach their disclosure obligations to Plaintiff and Class Members.

111.   Further, through their failure to provide timely and clear notification of the Data Breach to Plaintiff and Class Members, Defendants prevented Plaintiff and Class Members from taking meaningful, proactive steps to secure their PHI/PII.

112.   There is a close causal connection between Defendants' failure to implement security measures to protect the PHI/PII of Plaintiff and Class Members and the harm suffered, or risk of imminent harm suffered by Plaintiff and Class

Members.

113.    Plaintiff's and Class Members' PHI/PII was accessed as the proximate result of Defendants' failure to exercise reasonable care in safeguarding such PHI/PII by adopting, implementing, and maintaining appropriate security measures.

114.    Defendants' wrongful actions, inactions, and omissions constituted (and continue to constitute) common law negligence.

115.    The damages Plaintiff and Class Members have suffered (as alleged above) and will suffer were and are the direct and proximate result of Defendants' grossly negligent conduct.

116.    As a direct and proximate result of Defendants' negligence and negligence *per se*, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their PHI/PII is used; (iii) the compromise, publication, and/or theft of their PHI/PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PHI/PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to, efforts spent researching how to prevent, detect, contest, and recover from embarrassment and identity theft; (vi) the continued risk to their PHI/PII, which may remain in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate

- 28 -

and adequate measures to protect Plaintiff's and Class Members' PHI/PII in their

continued possession; and (vii) future costs in terms of time, effort, and money that

will be expended to prevent, detect, contest, and repair the impact of the PHI/PII

compromised as a result of the Data Breach for the remainder of the lives of Plaintiff

and Class Members.

117.    As a direct and proximate result of Defendants' negligence and

negligence *per se*, Plaintiff and Class Members have suffered and will continue to

suffer other forms of injury and/or harm, including, but not limited to, anxiety,

emotional distress, loss of privacy, and other economic and non-economic losses.

118.    Additionally, as a direct and proximate result of Defendants'

negligence, Plaintiff and Class Members have suffered and will suffer the continued

risks of exposure of their PHI/PII, which remain in Defendants' possession and are

subject to further unauthorized disclosures so long as Defendants fail to undertake

appropriate and adequate measures to protect the PHI/PII in their continued

possession.

**COUNT TWO**
**Unjust Enrichment**
**(On behalf of the Class)**

119.    Plaintiff incorporates by reference and re-alleges each and every

allegation set forth, as though fully set forth herein.

120.    Plaintiff and Class Members conferred a benefit on Defendants by

permitting their healthcare providers to turn over their Private Information to

- 29 -

Defendants. Moreover, upon information and belief, Plaintiff alleges that payments made by Defendants Clients to Defendants included payment for cybersecurity protection to protect and Class Members' Private Information, and that those cybersecurity costs were passed on to Plaintiff and Class Members in the form of elevated prices charged by Defendants Clients for their services. Plaintiff and Class Members did not receive such protection.

121.   Upon information and belief, Defendants fund their data security measures entirely from their general revenue, including from payments made to them by their Clients on behalf of Plaintiff and Class Members.

122.   As such, a portion of the payments made by Plaintiff and Class Members is to be used to provide a reasonable and adequate level of data security that is in compliance with applicable state and federal regulations and industry standards, and the amount of the portion of each payment made that is allocated to data security is known to Defendants.

123.   Defendants have retained the benefits of their unlawful conduct, including the amounts of payment received indirectly from Plaintiff and Class Members that should have been used for adequate cybersecurity practices that they failed to provide.

124.   Defendants knew that Plaintiff and Class Members conferred a benefit upon them, which Defendants accepted. Defendants profited from these transactions and used the Private Information of Plaintiff and Class Members for business

- 30 -

purposes, while failing to use the payments they received for adequate data security measures that would have secured Plaintiff and Class Members' Private Information and prevented the Data Breach.

125.   If Plaintiff and Class Members had known that Defendants had not adequately secured their Private Information, they would not have agreed to provide such Private Information to Defendants.

126.   Due to Defendants conduct alleged herein, they would be unjust and inequitable under the circumstances for Defendants to be permitted to retain the benefit of their wrongful conduct.

127.   As a direct and proximate result of Defendants conduct, Plaintiff and Class Members have suffered, and/or are at a continued, imminent risk of suffering, injury that includes but is not limited to the following: (i) actual identity theft; (ii) the loss of the opportunity to control how their Private Information is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their Private Information, which remains in Defendants possession and is subject to further unauthorized

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect Private Information in their continued possession; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

128.   Plaintiff and Class Members are entitled to full refunds, restitution, and/or damages from Defendants and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendants from their wrongful conduct. This can be accomplished by establishing a constructive trust from which the Plaintiff and Class Members may seek restitution or compensation.

129.   Plaintiff and Class Members may not have an adequate remedy at law against Defendants, and accordingly, they plead this claim for unjust enrichment.

### COUNT III
**VIOLATION OF CALIFORNIA CONSUMER PRIVACY ACT**
**CAL. CIV. CODE § 1798.100, *et seq.* ("CCPA")**
**(On behalf of Plaintiff and the California Class)**

130.   Plaintiff re-alleges and incorporates by reference herein all the allegations contained in the preceding paragraphs.

131.   In 2018, the California Legislature passed the CCPA, giving consumers broad protections and rights intended to safeguard their personal information. The CCPA imposes a duty on businesses that maintain personal information of California residents to implement and maintain reasonable security procedures and practices that

- 32 -

are appropriate to the nature of the information collected. Defendants failed to implement the appropriate procedures which resulted in the Data Breach.

132. The CCPA also requires "[a] business that discloses personal information about a California resident pursuant to a contract with a nonaffiliated third party . . . [to] require by contract that the third party implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure." Cal. Civ. Code § 1798.81.5(c).

133. Section 1798.150(a)(1) of the CCPA provides: "Any consumer whose nonencrypted or nonredacted personal information, as defined [by the CCPA] is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business' violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information may institute a civil action for statutory or actual damages, injunctive or declaratory relief, and any other relief the court deems proper."

134. Plaintiff and California Class Members are "consumer[s]" as defined by Cal. Civ. Code § 1798.140(g) because they are "natural person[s] who [are] California resident[s], as defined in § 17014 of Title 18 of the California Code of Regulations, as that section read on September 1, 2017."

135. Defendants are a "business" as defined by Civ. Code § 1798.140(c) because Defendants:

- are a "sole proprietorship, partnership, limited liability company, corporation, association, or other legal entity that is organized or operated for the profit or financial benefit of their shareholders or other owners;"

- "collect consumers' personal information, or on the behalf of which is collected and that alone, or jointly with others, determines the purposes and means of the processing of consumers' personal information;"

- Do business in California; and

- Have annual gross revenues in excess of $25 million; annually buys, receives for the business' commercial purposes, sells or shares for commercial purposes, alone or in combination, the personal information of 100,000 or more consumers, households, or devices; or derives 50 percent or more of their annual revenues from selling consumers' personal information.

136.  The Private Information compromised in the Data Breach is personal information as defined by California Civil Code § 1798.81.5(d)(1)(A) because it contains Plaintiff's and California Class Members' names and Social Security numbers.

137.  Plaintiff and California Class Members' Private Information was subject to unauthorized access and exfiltration, theft, or disclosure because their personal

information, including name and contact information, was unlawfully accessed, viewed and obtained by an unauthorized third party.

138.    The Data Breach occurred as a result of Defendants' failure to implement and maintain reasonable security procedures and practices appropriate to protect the Private Information of Plaintiff and California Class Members. Defendants failed to implement reasonable security procedures to prevent an attack on their servers, by hackers and to prevent unauthorized access of Plaintiff's and California Class Members' Private Information as a result of this attack.

139.    In accordance with Cal. Civ. Code § 1798.150(b), Plaintiff provided Defendants with written notice of their alleged violation of Cal. Civ. Code § 1798.150(a) in a letter sent to Defendants via certified mail on August 20, 2025.

140.    If Defendants fail to actually cure the noticed violations, Plaintiff and the California Subclass intend to seek statutory damages in an amount not less than one hundred dollars ($100) and not greater than seven hundred and fifty ($750) per consumer per incident, or actual damages, whichever is greater. See Cal. Civ. Code § 1798.150(a)(1)(A) & (b). Plaintiff will amend her complaint to reflect these alleged damages.

141.    As described herein, an actual controversy has arisen and now exists as to whether Defendants implemented and maintained reasonable security procedures and practices appropriate to the nature of the information so as to protect the personal information of Plaintiff and the Class under the CCPA.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

142.    A judicial determination of this issue is necessary and appropriate at this time under the circumstances to prevent further data breaches by Defendants.

## COUNT IV
**CALIFORNIA CONFIDENTIALITY OF MEDICAL INFORMATION ACT**
**Cal. Civ. Code §§ 56 *et seq.***
**(On Behalf of Plaintiff and the California Subclass)**

143.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

144.    Plaintiff is a "patient" as defined in Cal. Civ. Code § 56.05(m), and Defendants are "a provider of health care," as defined in Cal. Civ. Code § 56.06; thus, Defendants are subject to the requirements of the California Confidentiality of Medical Information Act ("CMIA"), Cal. Civ. Code § 56.10(a), (d) and (e), 56.36(b), 56.101(a) and (b).

145.    At all relevant times, Defendants were health care providers because they had the "purpose of maintaining medical information to make the information available to the individual or to a provider of health care at the request of the individual or a provider of health care, for purposes of allowing the individual to manager his or her information, or for the diagnosis or treatment of the individual."

146.    As providers of health care or a contractor, Defendants are required by the CMIA to ensure that medical information regarding patients is not disclosed or disseminated or released without patient's authorization, and to protect and preserve the confidentiality of the medical information regarding a patient, under Civil Code §§ 56.06, 56.10, 56.13, 56.20, 56.245, 56.26, 56.35, 56.36, and 56.101.

147.    As providers of health care or a contractor, Defendants are required by the CMIA not to disclose medical information regarding a patient without first obtaining an authorization under Civil Code §§ 56.06, 56.10, 56.13, 56.20, 56.245, 56.26, 56.35, and 56.104.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

148.  Defendants are a person licensed under California under California's Business and Professions Code, Division 2. See Cal. Bus. Prof. Code §§ 4000 *et seq.*

149.  Plaintiff and California Subclass Members are "patients" as defined in Cal. Civ. Code § 56.05(m) ("'Patient' means a natural person, whether or not still living, who received health care services from a provider of health care and to whom medical information pertains."). Furthermore, Plaintiff and California Subclass Members, as patients and customers of Defendants, had their individually identifiable "medical information," within the meaning of Cal. Civ. Code § 56.05(j), created, maintained, preserved, and stored on Defendants computer networks, and were patients on or before the date of the Data Breach.

150.  Defendants disclosed "medical information," as defined in CMIA, Cal. Civ. Code 196. § 56.05(j), to unauthorized persons without first obtaining consent, in violation of Cal. Civ. Code § 56.10(a). The disclosure of information to unauthorized individuals in the Data Breach resulted from the affirmative actions of Defendants employees, which allowed the hacker to see and obtain Plaintiff and California Subclass Members' medical information.

151.  Defendants negligently created, maintained, preserved, stored, and then exposed Plaintiff and California Subclass Members' individually identifiable "medical information," within the meaning of Cal. Civ. Code § 56.05(j), including Plaintiff and California Subclass Members' names, cities, states, zip codes, emails, telephone numbers, dates of birth, gender, patient service dates, patient service locations, and next appointment dates, that alone or in combination with other publicly available information, reveals their identities. Specifically, Defendants knowingly allowed and affirmatively acted in a manner that allowed unauthorized parties to access and actually view Plaintiff and California Subclass Members' confidential Private Information.

152.  Defendants negligence resulted in the release of individually identifiable medical information pertaining to Plaintiff and California Subclass Members to

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

1    unauthorized persons and the breach of the confidentiality of that information.

2    Defendants negligent failure to maintain, preserve, store, abandon, destroy, and/or

3    dispose of Plaintiff and California Subclass Members' medical information in a manner

4    that preserved the confidentiality of the information contained therein, in violation of

5    Cal. Civ. Code §§ 56.06 and 56.101(a).

6        153.   Defendants also violated Sections 56.06 and 56.101 of the CMIA, which

7    prohibits the negligent creation, maintenance, preservation, storage, abandonment,

8    destruction or disposal of confidential personal medical information.

9        154.   Plaintiff and California Subclass Members' medical information was

10   accessed, removed, and actually viewed by a hacker and other unauthorized parties

11   during and following the Data Breach.

12       155.   Plaintiff and California Subclass Members' medical information that was

13   the subject of the Data Breach included "electronic medical records" or "electronic

14   health records" as referenced by Civil Code § 56.101(c) and defined by 42 U.S.C. §

15   17921(5).

16       156.   Defendants computer systems did not protect and preserve the integrity of

17   electronic medical information in violation of Cal. Civ. Code § 56.101(b)(1)(A). As a

18   direct and proximate result of Defendants above-noted wrongful actions, inaction,

19   omissions, and want of ordinary care that directly and proximately caused the Data

20   Breach, and violation of the CMIA, Plaintiff and the California Subclass Members have

21   suffered (and will continue to suffer) economic damages and other injury and actual

22   harm in the form of, inter alia, (a) present, imminent, immediate and continuing

23   increased risk of identity theft, identity fraud and medical fraud—risks justifying

24   expenditures for protective and remedial services for which they are entitled to

25   compensation, (b) invasion of privacy, (c) breach of the confidentiality of the PHI, (d)

26   statutory damages under the CMIA, (e) deprivation of the value of their PHI, for which

27   there is well-established national and international markets, and/or, (f) the financial and

28

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

temporal cost of monitoring their credit, monitoring their financial accounts, and mitigating their damages.

157.    As a direct and proximate result of Defendants wrongful actions, inaction, omission, and want of ordinary care that directly and proximately caused the release of Plaintiff and California Subclass Members' Private Information, Plaintiff and California Subclass Members' personal medical information was viewed by, released to, and disclosed to third parties without Plaintiff and California Subclass Members' written authorization.

158.    Defendants negligent failure to maintain, preserve, store, abandon, destroy, and/or dispose of Plaintiff and California Subclass Members' medical information in a manner that preserved the confidentiality of the information contained therein violated the CMIA.

159.    Plaintiff and the California Subclass Members were injured and have suffered damages, as described above, from Defendants illegal and unauthorized disclosure and negligent release of their medical information in violation of Cal. Civ. Code §§ 56.10 and 56.101, and therefore seek relief under Civ. Code §§ 56.35 and 56.36, which allows for actual damages, nominal statutory damages of $1,000, punitive damages of $3,000, injunctive relief, and attorneys' fees, expenses and costs.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff, on behalf of herself, and the proposed Class, respectfully requests that the Court enter judgment in her favor and for the following specific relief against Defendants as follows:

1.    That the Court declare, adjudge, and decree that this action is a proper class action and certify the proposed class under F.R.C.P. Rule 23 (b)(1), (b)(2), and/or (b)(3), including the appointment of Plaintiff's counsel as Class Counsel;

- 39 -

2.      For an award of damages, including actual, nominal, and consequential damages, as allowed by law in an amount to be determined;

3.      That the Court enjoin Defendant, ordering them to cease from unlawful activities;

4.      For equitable relief enjoining Defendants from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' PHI/PII, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiff and Class Members;

5.      For injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an Order:

a.      prohibiting Defendants from engaging in the wrongful and unlawful acts described herein;

b.      requiring Defendants to protect, including through encryption, all data collected through the course of business in accordance with all applicable regulations, industry standards, and federal, state, or local laws;

c.      requiring Defendants to delete and purge the PHI/PII of Plaintiff and Class Members unless Defendants can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of

- 40 -

Plaintiff and Class Members;

d. requiring Defendants to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of Plaintiff's and Class Members' PHI/PII;

e. requiring Defendants to engage independent third-party security auditors and internal personnel to run automated security monitoring, simulated attacks, penetration tests, and audits on Defendants' systems periodically;

f. prohibiting Defendants from maintaining Plaintiff's and Class Members' PHI/PII on a cloud-based database;

g. requiring Defendants to segment data by creating firewalls and access controls so that, if one area of Defendants' network is compromised, hackers cannot gain access to other portions of Defendants' systems;

h. requiring Defendants to conduct regular database scanning and securing checks;

i. requiring Defendants to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective

- 41 -

responsibilities with handling PHI/PII, as well as protecting the PHI/PII of Plaintiff and Class Members;

j.    requiring Defendants to implement a system of tests to assess their respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendants' policies, programs, and systems for protecting personal identifying information;

k.    requiring Defendants to implement, maintain, review, and revise as necessary a threat management program to monitor Defendants' networks for internal and external threats appropriately, and assess whether monitoring tools are properly configured, tested, and updated; and

l.    requiring Defendants to meaningfully educate all Class Members about the threats they face due to the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves.

6.    For prejudgment interest on all amounts awarded, at the prevailing legal rate;

7.    For an award of attorney's fees, costs, and litigation expenses, as allowed by law; and

8.    For all other Orders, findings, and determinations identified and sought in this Complaint.

### JURY DEMAND

Plaintiff, individually and on behalf of the Class, hereby demands a trial by jury for all issues triable by jury.

Dated: August 20, 2025                    Respectfully submitted,

By: */s/ John J. Nelson*
John J. Nelson (SBN 317598)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive-Penthouse
Beverly Hills, CA 90212
Telephone: (858) 209-6941
Fax: (865) 522-0049
Email: jnelson@milberg.com

**LAUKAITIS LAW LLC**
Kevin Laukaitis*
954 Avenida Ponce De Leon
Suite 205, #10518
San Juan, PR 00907
T: (215) 789-4462
klaukaitis@laukaitislaw.com

*Pro Hac Vice admission forthcoming*

Attorneys for Plaintiff and the Class

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL